UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PSC METALS-CAW, LLC, et al., | ) | CASE NO. 4:17-cv-0582 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| PHILADELPHIA INDEMNITY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion to dismiss filed by defendant Philadelphia Indemnity Insurance Co. ("Philadelphia"). (Doc. No. 8 ["MTD"].)[1] Plaintiffs PSC Metals-CAW, LLC ("PSC Metals-CAW") and PSC Metals, Inc. ("PSC Metals") (collectively, "PSC") filed a brief in opposition (Doc. No. 9 ["Opp'n"]), and Philadelphia filed a reply brief (Doc. No. 11 ["Reply"]). PSC also filed an unopposed motion for leave to file a sur-reply. (Doc. No. 12.) That motion is granted and Doc. No. 12 is deemed to be PSC's sur-reply. For the reasons set forth herein, Philadelphia's motion to dismiss is granted.

## I. BACKGROUND

On March 21, 2017, PSC filed a complaint against Philadelphia for declaratory judgment, breach of contract, and bad faith due to Philadelphia's refusal to defend PSC in another lawsuit. (Doc. No. 1, Complaint ["Compl."].) The parties are diverse: both PSC entities are Ohio corporations, and Philadelphia is a Pennsylvania corporation. (Compl. ¶¶ 1-3, 6.) Philadelphia is

---

[1] As an alternative to dismissal, Philadelphia also seeks a more definite statement as to the bad faith claim in count III. Given the decision to dismiss the case, there is no need to require a more definite statement.

alleged to conduct business in Ohio, including the business that resulted in this lawsuit. (*Id.* ¶¶ 3, 6.) The amount in controversy exceeds $75,000. (*Id.* ¶ 5.)

PSC is in the business of scrap and metal recycling. (*Id.* ¶ 9.) Philadelphia is a property and casualty insurance company that provides commercial general liability insurance ("CGL") to corporations. (*Id.* ¶ 10.) On or about April 11, 2014, PSC Metals entered into a Temporary Labor Agreement, effective until April 11, 2015 (Doc. No. 3-1, Ex. B ["TLA"]) with Callos Resources, LLC ("Callos"), a non-party Delaware limited liability company with its principal place of business in Ohio. Callos is in the business of providing temporary labor services. (Compl. ¶¶ 11, 13, 14.) Callos had a CGL policy provided by Philadelphia that was in effect between May 1, 2014 and May 1, 2015. (*Id.* ¶ 12; Doc. No. 3, Ex. A ["CGL Policy"].)

Under the TLA, in addition to providing temporary labor services to PSC, Callos was required to name PSC Metals as an additional insured on its CGL policy and to maintain such policy in full force and effect during the term of the TLA. (Comp. ¶ 15; TLA ¶ 7.) PSC alleges that it was "also the intention of PSC Metals and Callos to add PSC-CAW as an additional insured" on the CGL policy. (Compl. ¶ 16.)

On June 2, 2016, Anthony Thomas ("Thomas") and Michelle Beverly sued PSC Metals, Inc., Cleveland Auto Wrecking,[2] and Callos in state court for an injury sustained by Thomas on August 22, 2014 at the PSC-CAW facility in Youngstown, Ohio. (Doc. No. 3-2, Ex. C [the "underlying lawsuit"].) In the underlying lawsuit, Thomas alleged generally that, on August 22, 2014, he was "an employee, servant and/or agent of Callos Resource, LLC[,] . . . working at [PSC-CAW] in Youngstown, Ohio on behalf of Defendant PSC Metals, Inc. through assignment from

---

[2] There is no dispute that PSC-CAW was misidentified as Cleveland Auto Wrecking.

Defendant Callos Resources, LLC." (Underlying Lawsuit ¶¶ 8, 9.) More specifically, in his negligence and intentional tort claim against PSC, Thomas alleged that he was "an employee of Defendant PSC Metals, Inc." (*Id.* ¶ 16), whereas in the separate negligence and intentional tort claim against Callos, he alleged that he was "an employee of Defendant Callos Resource, LLC[.]" (*Id.* ¶ 28.) (*See also* Compl. ¶ 19 ("In the Underlying Complaint, Mr. Thomas alleges, in the alternative, that he was an employee of PSC Metals or Callos at the time of the alleged accident."), citing Underlying Lawsuit ¶¶ 8, 16, 28, 29.)

PSC timely tendered the underlying lawsuit to Callos for purposes of obtaining insurance coverage as the additional insured. Callos, in turn, timely tendered the claim to Philadelphia. (Compl. ¶ 22.) By letter dated January 3, 2017, Philadelphia declined PSC's request for additional insured coverage under the CGL Policy. (Doc. No. 3-3, Ex. D.)

In this lawsuit, PSC asserts that Philadelphia had a duty to defend[3] them in the underlying lawsuit and that failure to do so was a breach of contract and was done in bad faith.

## II. DISCUSSION

### A. Standard on a Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather

---

[3] Although there is some mention of indemnification in the briefing, the complaint itself alleges only a duty to defend and seeks "reimburse[ment] . . . for all of [PSC Entities'] legal fees and expenses from the beginning of the Underlying Lawsuit to the present." (Compl. ¶ 35.)

than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

**B. Analysis**

PSC is seeking a declaration that Philadelphia had a duty to defend it in the underlying lawsuit. At the time the complaint was filed here, the underlying lawsuit was still pending. On June 5, 2017, plaintiffs in the underlying lawsuit voluntarily dismissed Callos without prejudice. On July 31, 2017, a little more than a month after the briefing on the instant motion to dismiss was complete, the state court granted summary judgment in favor of PSC, concluding (1) that Thomas was an employee of PSC Metals, not Callos, (2) that his negligence claim was barred under Ohio's worker's compensation statutes, (3) that his intentional tort claim failed for lack of a showing of specific intent to injure him, and (4) that the derivative loss of consortium claim necessarily also

4

failed. (*See* Doc. No. 13-1.)[4] According to the online docket of the state court, of which this Court may take judicial notice, an appeal from that decision remains pending.

PSC's fundamental argument in opposition to Philadelphia's motion to dismiss is that "[a]n insurer's duty to defend is broader than and distinct from its duty to indemnify." (Opp'n at 279, quoting *City of Sharonville v. Am. Emp'rs Ins. Co.*, 846 N.E.2d 833, 837 (Ohio 2006).) "The duty to defend arises when a complaint alleges a claim that could be covered by the insurance policy." (*Id.*, quoting *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 33 (Ohio 2007).) PSC argues that "if just one of the claims in the complaint is potentially or arguably within the policy, then the insurer must defend the insured for both the covered and non-covered claims." (*Id.* at 280, citing *Sharonville*, 846 N.E.2d at 837.) PSC asserts that the allegations of the underlying lawsuit are broad enough to have triggered the duty to defend PSC in state court.

An insurer, however, is not obligated to defend any claim (or person or entity) that is clearly and indisputably outside the contracted policy coverage. *Preferred Risk Ins. Co. v. Gill*, 507 N.E.2d 1118, 1123 (Ohio Ct. App. 1987). And that is what Philadelphia argues in its motion – (1) that, even if each one of the PSC entities is an "additional insured" under the CGL Policy (which Philadelphia disputes at to PSC-CAW), the "additional insured" coverage is not triggered because the underlying lawsuit did not seek to hold PSC vicariously liable for Callos' conduct; (2) that, because Thomas was an employee of one of the PSC entities at the time of his injury, coverage is also barred by the Employer's Liability Exclusion in the CGL Policy; and (3) that the claim is not one for "bodily injury" caused by an "occurrence" within the meaning of the CGL Policy and is otherwise barred by the Expected or Intended Injury Exclusion. Philadelphia is of the view that

---

[4] There were no insurance issues before the state court and, therefore, no rulings relating to the insurance policy at issue here.

there was never a duty to defend because the lack of coverage has been indisputable from the start, based on the allegations of the underlying lawsuit. An insurer "need not provide a defense if there is no set of facts alleged in the complaint that, if proved true, would invoke coverage for any claim." *Granger v. Auto-Owners Ins.*, 40 N.E.3d 1110, 1115 (Ohio 2015) (citing *Cincinnati Indem. Co. v. Martin*, 710 N.E.2d 677, 678 (1999)).

Although Philadelphia advances several reasons why it has no duty vis-à-vis PSC, one reason is entirely dispositive: that the "additional insured" coverage is not triggered by the allegations of the underlying lawsuit.

There is no question that PSC Metals is an "additional insured" under the CGL Policy. Philadelphia argues that PSC-CAW does not enjoy that status. PSC asserts that it was always the intent to include PSC-CAW as an "additional insured" because it was known when the TLA was executed with PSC Metals that the work performed by the temporary laborers would be performed at PSC-CAW's worksite in Youngstown. But that factual dispute and any legal implications need not be resolved. Assuming for the sake of this opinion only (and not constituting a finding by the Court for any other purpose) that each of the PSC entities is an "additional insured," Philadelphia's argument that the additional insured coverage has not been triggered has merit.

"An insurance policy is a contract." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Id*. (citations omitted). "[A court] examine[s] the insurance contract as a whole and presume[s] that the intent of the parties is reflected in the language used in the policy." *Id.* (citation omitted). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* (citation omitted).

"A policy of indemnity insurance is to be construed in the light of the subject matter with which the parties are dealing and the purpose to be accomplished[.]" *Bobier v. Nat'l Cas. Co.*, 54 N.E.2d 798 (Ohio 1944), syllabus ¶ 1; *Travelers Ins. Co. v. Buckeye Union Cas. Co.*, 178 N.E.2d 792 (Ohio 1961), syllabus ¶ 1 (citing *Bobier*). "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning," unless there is "a contractual definition, or a commercial or technical meaning acquired by usage[.]" *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348, 1351 (Ohio 1982) (citations omitted). Further, the meaning of the words and the intent of the parties "must be derived . . . from the instrument as a whole, and not from detached or isolated parts thereof." *Id.* at 1351 (citations omitted).

The purpose of an "additional insured" provision is "to protect the additional party from liability for the acts or omissions of the primary insured–that is, [the additional insured] is protected in situations where it is secondarily liable for [the named insured's] conduct." *Currier v. Penn-Ohio Logistics*, 927 N.E.2d 604, 609 (Ohio Ct. App. 2010) (citation omitted); *see also Boatright v. Penn-Ohio Logistics*, No. 10 MA 80, 2011 WL 773406, at *1 (Ohio Ct. App. Feb. 25, 2011) (agreeing with the reasoning of *Currier* and finding that the additional insured provision extended coverage only for vicarious liability, not for the additional insured's independent acts of negligence); *Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, No. 1:04 CV 48, 2012 WL 13020177, at *6 (N.D. Ohio Aug. 31, 2012) ("With regard to an additional insured on a general liability policy, Ohio courts consistently interpret the phrase 'arising out of,' as indicating coverage for vicarious liability only.") (citations omitted).

In this case, the additional insured endorsement, captioned "Blanket Additional Insureds When Required by Contract," provides that "[e]ach of the following is also insured:"

> Any person or organization where required by a written contract executed prior to the occurrence of a loss. Such person or organization is an additional insured for "bodily injury," "property damage" or "personal and advertising injury" *but only for liability arising out of the negligence of the named insured*. The limits of insurance applicable to these additional insureds are the lesser of the policy limits or those limits specified in a contract or agreement. These limits are included within and not in addition to the limits of insurance shown in the Declarations.

(CGL Policy at 132 (emphasis added).) There is nothing ambiguous about this provision. In order for this additional insured provision to apply, the underlying lawsuit would need to be attempting to hold PSC vicariously liable for the actions of Callos, the named insured on the CGL Policy.

A review of the allegations in the underlying lawsuit reveals that Thomas was allegedly injured as a result of the negligence and/or intentionally tortious conduct of PSC itself. (See Underlying lawsuit ¶¶ 15-26.)[5] This was clear from the outset of the underlying lawsuit. Therefore, even if both of the PSC entities qualified as an "additional insured" under the CGL Policy, that type of coverage was not triggered and, therefore, Philadelphia had no duty to defend. PSC is not entitled to a declaratory judgment to the contrary nor to a finding of breach of contract and/or bad faith for failure to defend.

## III. CONCLUSION

For the reasons set forth herein, defendant's motion to dismiss (Doc. No. 8) is granted and this case is closed.

**IT IS SO ORDERED**.

Dated: March 19, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[5] PSC's argument that, in the underlying lawsuit, Thomas alleged in the alternative that he was an employee of either PSC Metals or Callos at the time of his injury, does not change the Court's conclusion. For purposes of "additional insured" coverage, the issue is whether either of the PSC entities is being held vicariously liable for the actions of the named insured, Callos. That was not the case in the underlying lawsuit.